UNITED STATED DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARY LOU MISLAK-CASSON,
Plaintiff

v.

HOLYOKE PUBLIC SCHOOLS,
Defendant.

CIVIL ACTION NO.:

## COMPLAINT AND DEMAND FOR JURY TRIAL

### THE PARTIES

1. Plaintiff, Mary Lou Mislak-Casson ("Mislak-Casson"), is a natural person currently residing at 142 Cold Hill, Granby, Hampshire County, Massachusetts.

2. Defendant, Holyoke Public Schools ("HPS"), is an administrative subdivision of a municipality of the Commonwealth located at 57 Suffolk Street, Holyoke, Hampden County, Massachusetts.

### JURISDICTION AND VENUE

3. Jurisdiction in this court is proper under 28 USC §1331 as this Complaint raises questions of federal law.

4. Venue is proper as both parties reside in the District of Massachusetts.

### FACTS

5. Mislak-Casson is a 60 year old woman who was hired by HPS as an Art Teacher in 1987.

6. Throughout her tenure with HPS, Mislak-Casson performed her job well in multiple schools, teaching children from kindergarten through 8th grade.

7. In 2002, Mislak-Casson injured herself at school. As a result of this injury, Mislak-Casson was placed on a 20-pound lifting restriction.

8. This restriction was communicated to HPS but never implemented for Mislak-Casson.

9. In or around 2007, Mislak-Casson filed a claim of age discrimination against HPS related to her treatment as an older employee.

10. Thereafter, when she asked to view her personnel file, she saw the file folder was red.

11. Mislak-Casson believed the personnel file was red because she had filed the complaint against HPS.

12. After her earlier complaint against HPS resolved, Mislak-Casson continued to be the subject of harassment based on her age.

13. On multiple occasions, people in HPS management badgered Mislak-Casson about when she was going to retire.

14. For several years, her direct supervisor, Phil Christofori, regularly asked Mislak-Casson when she was going to retire, and most recently did so on or about April 7, 2016.

15. In the summer of 2015, Mislak-Casson met with the new principal of her school, Noreen Ewick, to discuss the upcoming school year.

16. During that discussion, Ewick also inquired as to when Mislak-Casson would be retiring.

17. During the 2015-2016, Mislak-Casson was the most senior art teacher in the entire district art department.

18. Despite her seniority status, for about 13 years Mislak-Casson was required to conduct her classes out of mobile carts, which she pushed from room to room.

19. Other art teachers had dedicated classrooms, including teachers new to the job.

20. Mislak-Casson requested her own dedicated room on many occasions but was not provided one.

21. The fact that Mislak-Casson was not provided a classroom caused many hardships for her, including the fact that beginning in 2015-2016, large objects were often placed in

front of the supply closet where she kept her materials, preventing easy access to her necessary supplies.

22. Upon information and belief, these actions were taken as part of a pattern and practice to undermine Mislak-Casson's ability to be an effective art teacher.

23. Mislak-Casson was given unequal assistance compared to other art teachers.

24. Mislak-Casson was required to take down students' artwork when other teachers were not.

25. This was another attempt to undermine Mislak-Casson's work with her students.

26. In January 2016, during one of Mislak-Casson's 7th grade art classes, several students became unruly and Mislak-Casson called for assistance.

27. Ewick responded to the classroom and, rather than assist Mislak-Casson, sent Mislak-Casson out of the room and spoke to the children.

28. Ewick then performed an observation of that class, resulting in a negative review, despite the fact that Ewick's presence in the class was due to Mislak-Casson's request for assistance.

29. This class was known to be one of the most unruly classes in the school.

30. On or about April 1, 2016, Ewick was observing Mislak-Casson teaching a class that included multiple special needs students, for which there should have been two paraprofessionals, and only one paraprofessional (who was then acting as the head teacher) was present to provide assistance and only for part of the class.

31. This greatly affected Mislak-Casson's ability to teach her students and negatively affected her review during the observation.

32. On or about April 4, 2016, during a snow day, Mislak-Casson attended a professional development training and was not paid for the day, in violation of HPS policy.

33. On April 8, 2016, Mislak-Casson had a class observation that resulted in a very harsh write-up, which included trumped up faults in her teaching.

34. The write-ups of this observation along with others were designed to make Mislak-Casson seem like an incompetent teacher in the face of her decades' worth of quality art education for the students of HPS.

35. Mislak-Casson received six observations during the 2015-2016 school year, including three during the week beginning April 4, 2016.

36. Other (younger) teachers received fewer observations or even none at all by April 2016.

37. On April 11, 2016, due to the stress of the situation she was facing at work, Mislak-Casson applied for leave under the Family and Medical Leave Act for anxiety and depression.

38. This leave was granted and Mislak-Casson remained out of work for the remainder of the 2015-2016 school year.

39. In consultation with her medical provider, Mislak-Casson asked for certain reasonable accommodations to be met to allow her to return to work.

40. As part of these accommodations, Mislak-Casson requested a change in schools.

41. On or about April 19, 2016, Mislak-Casson applied for a transfer to another art teacher position, which would have included a permanent classroom. Despite a stated deadline of April 20, 2016, soon after she applied Mislak-Casson received an email stating that the deadline for application would be extended until May.

42. Mislak-Casson was passed over for this position in favor of a younger, much less experienced teacher.

43. Mislak-Casson received an evaluation at the end of the year stating that she was not meeting her goals, despite the fact that some of the goals were not met specifically because she was on FMLA leave.

44. On or about June 8, 2016, while she was out on FMLA leave and a full year prior to the expiration of a two-year self-directed performance improvement plan, Mislak-Casson was punished by being placed on a one-year directed improvement plan.

45. The goals for this plan were purposely set to be unattainable, setting Mislak-Casson up to fail.

46. Mislak-Casson grieved the implementation of the one-year plan.

47. During the grievance meeting, it was discussed again that Mislak-Casson was requesting a change in schools as an accommodation.

48. Over the summer prior to the 2016-2017 school year, Mislak-Casson was contacted and told that HPS was going to return Mislak-Casson to the school, subject to her one-year performance improvement plan, and the only accommodation provided was the opportunity to be given a permanent classroom with supplies.

49. This situation was medically untenable, and because of the retaliatory and discriminatory treatment perpetrated against her by HPS, Mislak-Casson was forced to retire her position in the summer of 2016.

50. The treatment of Mislak-Casson is part of a pattern and practice showing discriminatory animus against older employees at HPS and also specifically against Mislak-Casson due to her request for leave under FMLA.

## COUNT I
*Violation of Massachusetts General Laws Chapter 151B, Section 4 (16)*

51. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 50 above and incorporates same by reference.

52. Plaintiff was a qualified handicapped person who was capable of performing the essential functions of her job with or without a reasonable accommodation.

53. Defendant discriminated against Plaintiff by adversely affecting the terms and conditions of her employment, including, but not limited to harassing her, denying her a reasonable accommodation, failing to engage in an interactive process, and ultimately causing her to resign her position.

54. Defendant's discriminatory actions constitute a violation of M.G.L. c.151B, § 4(16).

55. As a result of Defendant's illegal conduct, Plaintiff has suffered and continues to suffer damages, emotional distress, lost wages, and benefits.

## COUNT II
### Violation of 42 U.S.C. § 12101 et seq, Disability Discrimination

56. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 55 above and incorporates same by reference.

57. Defendant has violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, by discriminating against Plaintiff on the basis of her disability.

58. Plaintiff's disability is physical and limits performance of a major life activity.

59. Plaintiff advised Defendant of these facts and sought accommodations.

60. Plaintiff could perform the essential functions of her job with accommodations.

61. Defendant failed to provide reasonable accommodations and/or engage in an interactive process.

62. Defendant's illegal conduct as described more fully above was the proximate cause of harm suffered by Plaintiff.

## COUNT III
### FMLA Retaliation

6

63. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 62 above and incorporates same by reference.

64. After Plaintiff engaged in protected activity under the law and/or requested a leave under the FMLA, she was then harassed, refused accomodations and ultimately caused to resign from her employment.

65. Defendant's actions as alleged herein constitute unlawful retaliation in violation of 29 U.S.C. § 2615(a) (2).

66. As a result of Defendant's illegal conduct, Plaintiff has suffered and continues to suffer damages, emotional distress, lost wages and benefits.

## COUNT IV
### *M.G.L Chapter 151B Age Discrimination*

67. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 66 above and incorporates same by reference.

68. At all relevant times, Plaintiff was over the age of forty, putting her in a class of people given protections under the law.

69. Plaintiff has been discriminated against by Defendant in that she has been treated differently, not given the same opportunities, and punished more harshly than younger employees.

70. As a result of Defendant's discriminatory treatment, Plaintiff has suffered financial, emotional, and other harm.

## COUNT V
### *ADEA Age Discrimination (29 U.S.C. § 623(1))*

71. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 70 above and incorporates same by reference.

72. At all relevant times, Plaintiff was over the age of forty, putting her in a class of people given protections under the law.

73. Plaintiff has been discriminated against by Defendant in that she has been treated differently, not given the same opportunities, and punished more harshly than younger employees.

74. As a result of Defendant's discriminatory treatment, Plaintiff has suffered financial, emotional, and other harm.

**Wherefore**, Plaintiff Mary Lou Mislak-Casson demand judgment against Defendant Holyoke Public Schools in an amount to be determined at trial, plus liquidated damages, interest, costs, injunctive relief, attorney fees, and any other relief this Court deems fair, just, and equitable.

PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY ON ALL FACTS AND ISSUES SO TRIABLE.

PLAINTIFF,
MARY LOU MISLAK-CASSON

Date: June 7, 2018

Lisa Brodeur-McGan, Esq, (BBO# 55675)
lbm@brodeurmcgan.com
Daniel X. Montagna, Esq. (BBO# 647256)
dmontagna@brodeurmcgan.com
Brodeur-McGan, P.C.
1380 Main Street, Suite 202
Springfield, MA  01103
(413) 735-1775; Fax (413) 735-1772